**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CLEO GILES,

               Plaintiff,                       Case No. 03-74073

v.                                     Arthur J. Tarnow
                                     United States District Judge

HUGH WOLFENBARGER,

                                    Paul Komives
             Defendant.                 Magistrate Judge

_____/

**OPINION AND ORDER REJECTING MAGISTRATE**
**JUDGE'S REPORT AND RECOMMENDATION [DE 20] AND**
**CONDITIONALLY GRANTING PETITION FOR HABEAS CORPUS [DE 1][1]**

     Cleo Giles, ("Petitioner"), presently confined at Macomb Correctional Facility, has filed a petition for *habeas corpus* under 28 U.S.C. § 2254. Petitioner challenges his conviction on one count of first-degree felony murder, one count of assault with intent to rob while armed, and one count of felony firearm.[2]

     Petitioner argues that he is entitled to a new trial because his retained counsel failed to appear at trial on his behalf. Instead, Petitioner was represented by a stand-in attorney. Counsel failed to file a motion to suppress a statement Petitioner made to the police while he was hospitalized less than 24 hours after surgery for gun shot wounds. Petitioner's statement was admitted without objection. Counsel also did not establish an attorney-client relationship with Petitioner.

_____

   [1] Law Clerk Kevin Carlson provided quality research assistance.

   [2] M.C.L.A. § 750.316; M.C.L.A. § 750.83; M.C.L.A. § 750.89; and M.C.L.A. § 227b, respectively.

*Giles v. Wolfenbarger*
Case No. 03-74073

The trial court as trier of fact found that Petitioner and his brother had arranged a drug transaction with the intent to commit robbery.  It further found that the decedent was killed because the robbery went awry.  Petitioner was convicted of first-degree felony murder, assault with intent to rob while armed, and felony firearm.  Petitioner was acquitted on the charge of first degree premeditated murder.

Petitioner's conviction is flawed in several respects, including the possibility of actual innocence stemming from insufficient evidence on the felony murder charge.

The magistrate judge filed a report and recommendation ("R&R") recommending that the petition be dismissed for failure to comply with the one year statute of limitations.  The magistrate judge concluded that the petition was not timely and that Petitioner is not entitled to any equitable tolling of the limitations period.

For the reasons that follow, the R&R is **REJECTED** and Petitioner's application for *habeas corpus* is **CONDITIONALLY GRANTED**.

## I.  BACKGROUND

### A.  Trial Facts and Petitioner's Statement to Police While Hospitalized

Petitioner was convicted on December 14, 1989, following a bench trial in Detroit Recorder's Court.  Petitioner was sentenced to life in prison.

Petitioner testified that he shot the decedent, George Young, in self defense during a drug transaction.  Another man, James Lovejoy, suffered six gun shot wounds during the incident.  Young died at the scene, but Lovejoy recovered.  Petitioner suffered two gun shot wounds.

The day after the shooting, while Petitioner was hospitalized for his gun shot wounds and

2

*Giles v. Wolfenbarger*
Case No. 03-74073

under police guard, Petitioner was interrogated by the police.  At the time of the interrogation, Petitioner was in bed with I-Vs in his arm and tubes in his chest.  He was disoriented from his injuries and treatment.  Petitioner was unable to move his hands at the time of his statement.  Therefore, he did not sign an advice of rights form and did not sign his statement, which was reduced to writing by the interrogating officer.

The officer who interviewed Petitioner testified that he went to the nurses' station and asked if Petitioner was on any medication that might alter or interfere with his ability to understand the situation.  The officer also testified that he spoke with a doctor, whose name he could not recall.  According to the officer, he did not have any reason to believe that Petitioner could not understand what was going on.  He testified that Petitioner was "alert and conscious" at the time of the statement.  The officers recognized that Petitioner could not sign his statement because of the I-Vs in his body and "other things."

Defense counsel did not cross-examine the officer after he testified about the statement.  Therefore, there was no testimony at trial as to whether or not Petitioner was restrained.  Nor was there any testimony as to the amount of time he had to recover from surgery prior to the statement.

Plaintiff testified that he could not recall making the statement at the hospital.  In his statement, Petitioner told the police that he was alone in a man named Lonnie's car on Seven Mile Road in Detroit when two men in a small car tried to pull him over.  He turned onto Griggs Street, jumped out of the car, and tried to run for help.  The passenger of the car grabbed him and shot him.  He fell on the ground by his attackers' open car door.  He noticed a long gun between

3

*Giles v. Wolfenbarger*
Case No. 03-74073

the passenger seat and the car door. He grabbed the gun, and as they struggled, the gun went off. Petitioner ran to Ilene Street, dropping the gun along the way. He wanted to get help because his attackers were trying to kill him.

Petitioner's hospital statement contradicted his trial testimony. At trial, Petitioner testified that he and his brother Reginald Giles arranged a drug transaction with Young and Lovejoy. Petitioner and his brother went to a Little Caesar's Pizza store. His brother carried a briefcase containing $60,000 for the transactoin.

According to Petitioner, he approached the car in which Young and Lovejoy were sitting and saw Young inside tussling with his brother. Petitioner testified that he only intended to purchase drugs, and that he had no intention of robbing or shooting anyone. Petitioner testified that he did not shoot first, and only fired his gun after hearing a gun shot and discovering that he had been shot.

Lovejoy testified that he went to the Little Caesar's with Young, who had a nine-millimeter handgun and a white sack containing drugs. When the arrived at the store, they met Petitioner and his brother. R. Giles held a gun to Lovejoy and asked, "where's the shit?" while Petitioner stepped out of his car with an assault rifle. R. Giles took the bag from Lovejoy, and Petitioner walked to the side of Young's car. According to Lovejoy, he first saw gunfire coming from Petitioner's gun, and then saw Young shooting his gun. Four years after the trial, Lovejoy recanted his testimony in an affidavit, stating that he intended to rob Petitioner and his brother, and that he cooperated at trial because of coercion by the police.

Shortly before his trial, Petitioner retained Charles Campbell as counsel. Campbell

4

*Giles v. Wolfenbarger*
Case No. 03-74073

entered his appearance four days before trial.  At the time, Campbell had a conflicting trial

scheduled for Petitioner's trial date.  However, he failed to request an adjournment.

   On the morning of his trial, while waiting in the "bullpen,"[3] Petitioner met face-to-face

with attorney Campbell for the first time.  Campbell informed Petitioner that he had to be in trial

in another courtroom and introduced Petitioner to attorney Neil Leithauser.

Over Petitioner's objections, attorney Leithauser stood in for Campbell as Petitioner's

trial counsel.  Leithauser requested an adjournment.  The trial judge expressed anger that

Campbell had entered his appearance and failed to request an adjournment, but rejected

Leithauser's request for an adjournment.  He ordered the trial to proceed.  He permitted

Leithauser to proceed upon Leithauser's representation that he was familiar with the case and

prepared to go forward with the trial.

Leithauser did not challenge the admissibility of Petitioner's statement to the police, and

it was admitted into evidence.  Following the bench trial, Petitioner was convicted.  Petitioner

was 19 at the time of his conviction.

## B.  *HABEAS* PROCEEDINGS IN FEDERAL COURT

On October 8, 2003, Petitioner, through counsel, filed this application for a writ of

*habeas corpus* pursuant to 28 U.S.C. § 2254. Petitioner's application raises two grounds for

relief: (1) ineffective assistance of counsel when he was represented by substitute counsel who

---

[3]The "bullpen" is a cell located behind a courtroom.  It is usually crowded with detainees and requires attorneys and clients to shout their communication.  Attorneys, court personnel, and officers often walk the corridor where the bullpen is located, further diminishing attorney-client privacy.

*Giles v. Wolfenbarger*
Case No. 03-74073

was not prepared to try the case; and (2) ineffective assistance of counsel by counsel's failure to move to suppress his statement to the police.

Respondent filed an answer on March 15, 2004. Respondent argues that Petitioner's claims are barred by the statute of limitations set forth in 28 U.S.C. § 2244(d), and alternatively that Petitioner's claims do not entitle him to *habeas* relief. The Magistrate Judge recommended that the petition be dismissed as untimely.

## II.  STANDARD OF REVIEW

The standard of review for *habeas* cases is set forth in 28 U.S.C. § 2254(d), which provides:

> An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  In addition, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

6

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  Id. at 409.  A federal *habeas* court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  Id. at 411.

### III.  DISCUSSION

### A.  Ineffective Assistance of Counsel

### 1.  Failure to File a Motion to Suppress Involuntary Confession

"The state bears the burden of proving that a defendant 'voluntarily, knowingly, and

intelligently waived his right to silence and counsel.'"  *Abela v. Martin*, 380 F.3d 915, 928 (6th

Cir. 2004) (quoting *United States v. Bentley*, 726 F. 2d 1124, 1126 (6th Cir. 1984).  The court

must examine the "totality of the circumstances in determining whether Petitioner's statement

was involuntary."  *Id.* (citing *Brown v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416

(1975).  A finding of coercive police activity is a pre-requisite to finding that a statement was

involuntary.  *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986).

If coercive activity is established, the Court should consider the following factors: (1) length of

interrogation; (2) location of interrogation; (3) continuity of interrogation; (4) the suspect's

maturity; (5) the suspect's education; (6) the suspect's physical condition and mental health; and

(7) whether the suspect was advised of *Miranda* rights.  *Withrow v. Williams*, 507 U.S. 680, 693-

94, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993).

The Court finds that under the totality of the circumstances Petitioner's statement was

*Giles v. Wolfenbarger*
Case No. 03-74073

involuntary.  Petitioner was subjected to custodial interrogation in the hospital as he recovered

from recent surgery to treat two gun shot wounds.  Petitioner was in a hospital bed.  The

interrogating officers noticed that he had I-Vs and different medical equipment attached to his

body.

During the *Walker* hearing, the interrogating officer testified that he did not record

Petitioner's interrogation.  He further testified that "as long as I was at the Homicide Section for

over 14 years it [audio or video recording] was never done."  *Walker* Hrg. Trans. at 18.

Respondent's case is weakened by the lack of an audio or video record.

> As recently noted:
>
> In the past few years, the many benefits of complete audio or video recording of custodial interviews have become increasingly apparent to all parties.  For suspects, recordings expose abusive tactics and falsehoods about confessions.  For law enforcement officials, recordings spare them from defending unfair charges of using heavy-handed methods or misstating what occurred.  Furthermore, prosecutors and defense lawyers no longer engage in courtroom disputes as to what took place: the interviews may contain exculpatory statements favorable to the defense, or admissions which strengthen the prosecution's case, but in either event, the record is clear and conclusive.  Trial judges and reviewing courts no longer have to evaluate conflicting versions of what happened.  Unlike the customary interview during which the police make handwritten notes and later prepare a typewritten report, electronic recordings contain a permanent record of the event, leaving no room for dispute as to what officers and suspects said and did.

Thomas P. Sullivan, *Electronic Recording of Custodial Interrogations: Everybody Wins*, 95 J.

CRIM. L. & CRIMINONLOGY 1127, 1127-28 (Spring 2005).

Petitioner testified that following surgery he had tubes in his chest, tubes in his mouth,

and a tube in his nose.  He could not move his arms.  He was not physically capable of signing

*Giles v. Wolfenbarger*
Case No. 03-74073

the constitutional rights form provided by the interrogating officers.  Petitioner testified that he

was semi-conscious at the time of the interrogation.  Petitioner was eighteen years-old at the time

of the interrogation. By interrogating Petitioner under these circumstances, the police engaged in

overreaching and coercive conduct.

In granting Petitioner's 6.500 motion for relief from Judgment, Judge Vera Massey-Jones

held:

> The defendant has established that both trial counsel and appellate counsel were ineffective.  And further but for mistakes of each, the defendant had a reasonably likely chance of acquittal.
>
> First, retained appellate counsel failed to file a brief for the defendant, and the Court of Appeals entered an order dismissing the appeal for lack of progress.  This effectively denied defendant any appellate review of alleged errors.
>
> **Two of the mistakes of trial counsel are so glaring that this Court is convinced that a new trial must be granted.**
>
> First trial counsel failed to request a *Walker*[4] hearing.  **Thus the prosecutor was able to use the statement of the defendant that was taken while the defendant was hospitalized with gunshot injuries.**
>
> *          *          *
>
> Under the circumstances, it is not surprising that the defendant was convicted on all the charges.  In fact, he was convicted of felony murder rather than first degree murder, but they are both the same as far as this court is concerned.  These two errors[5] evidence that the defendant was denied a fair trial.
>
> The ineffective assistance of appellate counsel establishes good cause for failure to raise these issues in prior appeals.  The errors of trial counsel establishes actual prejudice in that but for these alleged errors, the defendant would have had a

---

[4]*People v. Walker (On Rehearing)*, 132 N.W. 2d 87, 374 Mich. 331 (1965).

[5]The second error is discussed at III.A.3, *infra*, at 12.

9

*Giles v. Wolfenbarger*
Case No. 03-74073

reasonably likely chance of an acquittal.

Motion Hrg. Transcript, 10/9/99 at 5-6. (emphasis added).

In *lieu* of granting the prosecution's application for leave to appeal, the court of appeals

remanded to the trial court for a statement of factors upon which it granted the 6.500 motion. The

trial judge stated her reasoning as follows:

> Well, it's quite obvious...the man was tried for a murder case.  On the day of trial,
> the attorney had notified–it was–if I remember, wasn't it–the attorney had notified
> the trial judge that he wasn't prepared to try the case because he thought he was
> supposed to be in trial someplace else.
>
> There was a confession that was used in evidence.  There had never been a
> request for a *Walker* hearing.
>
> **I did have a *Walker* hearing.  The statement was taken from the defendant
> while he was in a hospital setting, having had surgery, under all kinds of
> medication, which led me to the point to believe that the People could not
> establish that the statement was in fact voluntarily made.**  And if there had
> been no confession, and if there had been a prepared attorney, the man might have
> had an acquittal.
>
> \*   \*   \*
>
> **But, gee whiz, this case, to me, was the clearest thing I've ever seen to require
> a new trial...But, gee whiz, I mean, the defendant has got to have a fighting
> chance for acquittal.  He's got to have a lawyer that's prepared to try the
> case.**
>
> And here it is a *Walker* hearing.  The man is in the hospital, he's under
> medication, he's had surgery, and the lawyer doesn't do any of these things, and
> the Court of Appeals sends it back to me, and says, "Why did you grant a new
> trial?"

Motion Hearing. Trans, 4/28/00 at 3-6. (emphasis added).

The court of appeals held that Petitioner was not prejudiced by stand-in counsel's failure

to file a motion to suppress.  *See People v. Giles*, 2001 WL 1529158 (Mich. App. 2001)

*Giles v. Wolfenbarger*
Case No. 03-74073

(unpublished). According to the court of appeals, the trial judge sitting as trier of fact based his factual determinations on independent evidence that was unrelated to the impact of Defendant's statement. Such evidence included the fact that an empty briefcase was found at the scene, which provided "extremely persuasive circumstantial evidence that defendant carried an assault rifle because he planned to rob Lovejoy and Young, then used the gun when the robbery went badly." *Id.* at *4. Therefore, even though the court of appeals assumed, without deciding, that "there existed no sound trial strategy for defense counsel's failure to move for a *Walker* hearing," it concluded that his errors at trial did not actually prejudice Petitioner's defense.

### 2. Harmless Error

The court of appeals properly assumed that counsel committed a serious error by failing to move for a *Walker* hearing as to Petitioner's hospital statement. However, the court of appeals erroneously concluded that there was overwhelming evidence of Petitioner's guilt, such that the admission of his statement to the police could be considered harmless.

The trial court's analysis of the circumstantial evidence was erroneous. The trial court presumably concluded that because the briefcase that the Giles brothers took to the scene was found empty, then they must have arrived at the scene for the purpose of committing a robbery. Absent any other evidence of their intent, this cannot be relied upon as overwhelming evidence of guilt.

More importantly, the trial judge's finding as to the significance of the empty briefcase turned at least in part on his rejection of Petitioner's credibility, which was defeated chiefly by the admission of his involuntary statement to the police. As to Petitioner's hospital statement,

11

*Giles v. Wolfenbarger*
Case No. 03-74073

the trial court concluded:

> Defendant was asked to explain how he got shot. Defendant claimed that while
> driving on Seven Mile, he was "pulled over by two guys in a small car." He
> stated that he turned on to Griggs and jumped from the car, at which time the
> "Passenger of the car" grabbed him and shot him. He fell by the door of the car
> and observed a long gun inside. He said that he grabbed this gun as they were
> struggling he pulled the trigger and the gun went "ta ta." He said that he ran and
> that he dropped the long gun. He claimed to have seen these men the previous
> day.

Transcript, 12/14/89 at 167.

> The Court concluded that the statement defeated Petitioner's credibility:

> **On the day after the shooting and while himself recuperating from gunshot
> wounds, defendant gave to Sgt. Gerds an outrageous story to account for his
> wounds, which was totally inconsistent with an abundance of other testimony
> given at the trial which was supported by circumstantial evidence.**

Trial Transcript, 12/14/89 at 167. (emphasis added).

Because of his impaired physical and mental condition at the time he talked to the police,

the story told in Petitioner's statement was incoherent and far-fetched. Indeed, the danger of

admitting Petitioner's involuntary statement was that it would make any future statement appear

similarly outrageous or unworthy of belief. The impact of the statement on the trial judge's

reasoning was not harmless. Rather, it appears that the statement, and the resulting credibility

determination, were the keys to the trial judge's factual finding that Young was killed in the

course of a robbery. Without this finding, it is likely that Petitioner could not have been found

guilty of first-degree felony murder. Therefore, the application of the *Strickland* test by the court

of appeals, which held that Petitioner was not prejudiced, was objectively unreasonable.

12

*Giles v. Wolfenbarger*
Case No. 03-74073

### 3.  No Attorney-Client Relationship

The court of appeals rejected the argument that stand-in counsel was ineffective for a lack of preparation, since counsel made numerous other appropriate objections throughout the record.

In addition, the court of appeals declined to address Petitioner's claim that he was denied the counsel of his own choosing, that is, his retained counsel, because that issue was outside the scope of the prosecution's appeal and was first raised in Petitioner's reply brief, that is, because Petitioner did not file a cross-appeal on this issue.

The court of appeals erred by declining to address this claim.[6]  As noted, the trial court judge specifically held that Petitioner was wrongfully forced to go to trial with stand-in counsel rather than his retained, prepared counsel:

> **Second, trial counsel failed to request an adjournment when he knew that he was scheduled to be in trial on another matter.**  Therefore, the defendant was forced to proceed to trial without his retained, prepared trial counsel.  In fact, defendant proceeded to trial with an unprepared counsel in a first-degree murder case.

Motion Hrg. Transcript, 10/9/99 at 5-6. (emphasis added).

The prosecution appealed the trial judge's order.  Therefore, it was clearly erroneous for the court of appeals to hold that this issue was outside the scope of the appeal.

Recently, the Supreme Court granted *certiorari* in *United States v. Gonzalez-Lopez*, No.

---

[6]The court of appeals also erred by stating that Petitioner did not preserve this issue for its review because he did not file a cross-appeal.  The issue of deprivation of counsel was resolved by the trial court in Petitioner's favor.  Therefore, there was no basis for holding him to the burden of cross-appealing on that issue.

13

*Giles v. Wolfenbarger*
Case No. 03-74073

05-352 (January 6, 2006), to consider whether a criminal conviction must be automatically

reversed when a trial judge has denied an individual the right to a defense lawyer of his own

choosing.  In *Gonzalez-Lopez*, the Eighth Circuit held that the district court should not have

denied defense counsel's application for *pro hac vice* admission by an out of state attorney,

without considering the effects of the denial on the defendant's Sixth Amendment rights.  *U.S. v.

Gonzalez-Lopez*, 399 F.3d 924 (8th Cir. 2005). More importantly, the Court held that the district

court committed "structural" error, not subject to harmless-error analysis.  *Id.*

Although it is unclear how the Supreme Court will rule, and whether or not its decision

will be retroactive, the question of whether or not the deprivation of retained counsel constitutes

"structural error" is serious enough to warrant *habeas* relief.

At the time of Petitioner's conviction in 1989, it was clearly established that the Sixth

Amendment protects the right of a non-indigent criminal defendant to be represented by the

attorney selected by the defendant.  *See Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct.

1692, 100 L. Ed. 2d 140 (1988) (holding that the "right to choose one's own counsel is

circumscribed in several important respects" such as where the attorney is not a member of the

bar, the defendant cannot afford the attorney he desires, the attorney declines to represent the

defendant, or the attorney has a previous or ongoing relationship with an opposing party); *see

also Powell v. Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 (1932).

This is not a case where a defendant wished to substitute retained counsel on the eve of

trial, or sought representation by counsel whose presence would have impaired the

administration of the criminal justice system. Rather, Petitioner, who had very little money,

14

*Giles v. Wolfenbarger*
Case No. 03-74073

retained an attorney who misled the trial court, failed to attend the first day of trial, and forced

Petitioner to proceed with a stand-in attorney who despite his representations to the trial court

was not, and could not be, prepared to try the case.

The Michigan Court of Appeals unreasonably applied Supreme Court law in denying

Petitioner's ineffective assistance of counsel claim.  In applying the test from *Strickland v.*

*Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 674 (1984), the court of appeals ignored

the fact that stand-in counsel was completely unprepared to try Petitioner's first-degree murder

case, and therefore that Petitioner was constructively denied counsel during a critical stage of his

trial.

In *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984),

the Supreme Court set forth three exceptions to the *Strickland* standard, for which a showing of

prejudice is not necessary.  In general, prejudice should be presumed where (1) there is a

complete denial of counsel at a critical stage; (2) counsel entirely fails to subject the

prosecution's case to meaningful adversarial testing; and (3) counsel is placed in circumstances

in which even a fully competent attorney could not render effective assistance.  *Id.* at 659.

The facts presented create a presumption of prejudice, since stand-in counsel was

completely unprepared to act as an effective advocate and the circumstances of the trial

prevented counsel from providing adequate representation.  *See Mitchell v. Mason*, 325 F.3d 732

(6th Cir. 2003) (petitioner denied counsel during the critical stage of pre-trial preparation, and

prejudice should be presumed, where attorney met with client briefly on three occasions and was

suspended from practice for one month prior to his first-degree murder trial); *see also Hunt v.*

15

*Giles v. Wolfenbarger*
Case No. 03-74073

*Mitchell*, 261F. 2d 575, 583 (6th Cir. 2001) (finding total absence of counsel where attorney was

appointed only minutes before trial and had no opportunity to consult with his client or prepare a

defense); *see also French v. Jones*, 332 F. 3d 430, 439 (6th Cir. 2003) (quoting Cronic, 466 U.S.

at 659); *see also Powell v. Alabama*, 287 U.S. 45, 71, 53 S. Ct. 55, 77 L. Ed. 158 (1932) (holding

that the duty to provide counsel "is not discharged by an assignment at such a time or under such

circumstances as to preclude the giving of effective aid in the preparation and trial of the case.")


In this case, Petitioner did not meet his retained counsel face-to-face until the morning of

his trial for first-degree murder.  Rather than working to prepare a trial strategy with Petitioner,

counsel announced that he would be unavailable for trial and forced Petitioner to proceed with

stand-in counsel.  The trial court expressed frustration with the hastiness of this arrangement, but

did not grant an adjournment to ensure that Petitioner could be adequately represented.  As Judge

Jones concluded at the *Walker* hearing, the absence of counsel at trial left Petitioner with no

chance of defending himself:

> **This man had no chance at all of acquittal because he didn't have a lawyer.**
> **He had nothing.**

Motion Hrg. Transcript, 4/28/00 at 6 (emphasis added).

As to counsel's lack of preparation, the court of appeals held that "[t]he mere fact that

Leithauser may have been ill prepared is irrelevant if the lack of preparation did not result in an

error that prejudiced defendant."  *Giles*, *supra* at *2.  The court of appeals also rejected

Petitioner's claim that counsel failed to test the prosecution's case.  In reaching this conclusion,

16

*Giles v. Wolfenbarger*
Case No. 03-74073

the court emphasized that counsel "made appropriate objections throughout the record." *Id.* at

*4. However, virtually any attorney could stand in at trial for the purpose of placing evidentiary

objections on the record. This does not defeat the fact that Petitioner's stand-in counsel, who

demonstrated a lack of preparation for defending his client's first degree murder case, could not

have provided effective assistance under the circumstances. The decision of the court of appeals,

which failed to consider the presumptive prejudice created by counsel's representation, was

objectively unreasonable in light of the *Cronic* standard.

The application of the *Strickland* test by the court of appeals was also objectively

unreasonable. Trial counsel's most obvious mistake, failing to object to the admission of

Petitioner's hospital statement, was a serious error that prejudiced Petitioner's case.

### B.  Statute of Limitations

### 1.  General Rule

Petitioner's conviction became final prior to the enactment of AEDPA. Therefore, absent

any tolling, Petitioner had one year after the effective date of AEDPA (from April 24, 1996, until

April 24, 1997) in which to file his *habeas* petition. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir.

2002).[7,8]

---

[7]See Appendix for time line.

[8]Generally, the statute of limitations runs from the latest of: (1) the date on which the
judgment became final, i.e., when time for seeking direct review has expired; (2) the date on
which any impediment to filing the application was removed by the state; (3) the date on which a
newly enacted constitutional right was created and made retroactive to cases on collateral
review; and (4) the date on which the factual predicate of the claim or claims presented could
have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1).
   A conviction becomes final for § 2244 purposes when direct review concludes, not when

17

*Giles v. Wolfenbarger*
Case No. 03-74073

Petitioner's conviction became final on January 21, 1993, when his direct appeal was dismissed for a lack of progress. However, because Petitioner's conviction became final prior to AEDPA, he had until April 24, 1997 to file his *habeas* petition. On February 26, 1997, Petitioner's motion for 6.500 relief and for counsel was remanded to the trial court by the court of appeals for appointment of counsel to file a motion for relief from judgment under M.C.R. 6.500.[9]

Where the petitioner files a post-conviction petition in state court, the statute of limitations is tolled pending the post-conviction proceedings. *McClendon v. Sherman*, 329 F.3d 490, 493-94 (6th Cir. 2003). As the Sixth Circuit recently stated, "[a]s long as petitioners are seeking review in a state court, the one-year statute of limitations does not run." *In re: Edward O'Neal Bowen*, --- F. 3d ---, No. 04-1286, Slip. Op. at 3 (6th Cir. January 20, 2006). The Magistrate Judge concluded that the Petitioner's 6.500 motion did not stop the limitations clock long enough to allow the filing of a *habeas* petition in October of 2003.

According to the Magistrate Judge, the clock had been suspended during the pendency of Petitioner's 6.500 motion, but began to run on February 26, 1997 because the Court of Appeals

─────────────────────

the petitioner has exhausted all state remedies. *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001). Even where a petitioner has asserted a claim of ineffective assistance of counsel in his state post-conviction petition, the conviction still becomes final at the conclusion of his direct appeal and not at the conclusion of any post-conviction proceedings. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 200 (2004); *McClendon v. Sherman*, 329 F.3d 490, 493-94 (6th Cir. 2003). Where the petitioner files a post-conviction petition in state court, the statute of limitations is tolled pending the post-conviction proceedings. *McClendon*, 329 F.3d at 494. However, the pendency of such proceedings does not start the limitations clock anew. *Id.*

[9]Counsel was not appointed until July 10, 1997.

18

*Giles v. Wolfenbarger*
Case No. 03-74073

remanded Petitioner's 6.500 motion to the trial court for appointment of counsel. The Magistrate

Judge concluded that "[a]t that time, there was no longer a pending motion for relief from

judgment in the trial court; indeed, the purpose of the court of appeals's remand was to allow

petitioner to file such a motion." R&R at 6. On this basis, the Magistrate Judge concluded that

the limitations clock began running when the court of appeals remanded, and then ran for 610

days until October 30, 1998, when Petitioner's counsel filed his second motion for relief from

judgment.

The question presented in this case is whether or not Petitioner submitted a "properly

filed" 6.500 motion, and whether that motion remained "pending" when the state court of

appeals remanded to the state court for appointment of counsel. On February 26, 1997, the court

of appeals transferred the merits to the trial court. Therefore, Petitioner's motion was pending

for the entire time after the limitations period ended on April 24, 1997.

In order to properly analyze the question of timeliness, the Court will evaluate the

Supreme Court's decisions as to the "properly filed" and "pending" language used in AEDPA to

describe state post-conviction filings that toll the period of limitations.

In *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000), the Supreme

Court held that "an application is 'properly filed' when its delivery and acceptance are in

compliance with the applicable laws and rules governing filings." Thus, the question of whether

or not Petitioner's 6.500 motion was 'properly filed' depends in part on Michigan's procedural

rules. *Carey v. Saffold*, 536 U.S. 214, 223, 122 S. Ct. 2134, 153 L. Ed. 2d 26 (2002) ("[F]or the

purposes of applying a federal statute that interacts with state procedural rules, we look to how a

19

*Giles v. Wolfenbarger*
Case No. 03-74073

state procedure functions[.]")

In *Artuz*, the Supreme Court expressly disagreed with the state's contention that "an application for state post-conviction or other collateral review is not 'properly filed' for purposes of [AEDPA] unless it complies with all mandatory state-law procedural requirements that would bar review of the merits of the application. *Artuz*, 531 U.S. at 8. The Supreme Court settled on the following rule:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. And an application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers. But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims *contained in the application* are meritorious and free of the procedural bar.

*Artuz*, 531 U.S. at 8-9 (internal citations and quotations omitted).

In this case, the first question is whether or not Petitioner's 6.500 motion was "properly filed" prior to the effective date of AEDPA. Petitioner's initial 6.500 motion was filed approximately thirteen months prior to the effective date of AEDPA, on March 24, 1995. Three months later, on June 28, 1995, it was dismissed by the trial court.

Petitioner's 6.500 motion was "properly filed" in state court because it substantially complied with all of the essential elements listed in Mich. Ct. R. 6.502(C). Also, the court of appeals's remand order gave the trial court jurisdiction over Petitioner's 6.500 motion, for appointment of counsel and consideration on the merits, prior to the expiration of the imitations

20

*Giles v. Wolfenbarger*
Case No. 03-74073

period.

The question in this case is whether or not Petitioner's 6.500 motion remained "pending"

in the state court long enough to allow the filing of the *habeas* petition in October of 2003.

In *Woodford v. Garceau*, 538 U.S. 202, 206-10, 123 S. Ct. 1398, 155 L. Ed. 2d 363

(2003), the question presented was whether or not a federal *habeas* petition was "pending" on

the effective date of AEDPA. Prior to the effective date of AEDPA, the petitioner had applied

for the appointment of counsel and a stay of execution. However, the petitioner did not actually

file his *habeas* petition until after the effective date. The Supreme Court held that the petition

was not pending on the effective date:

> Because of AEDPA's heavy emphasis on the standards governing the review of
> the *merits* of a *habeas* application, we interpret the rule...in view of that
> emphasis...Thus, whether AEDPA applies to a state prisoner turns on what was
> before a federal court on the date AEDPA became effective. If, on that date, the
> state prisoner had before a federal court an application for *habeas* relief seeking
> an adjudication on the *merits* of the petitioner's claims, then amended § 2254(d)
> does not apply. Otherwise, an application filed after AEDPA's effective date
> should be reviewed under AEDPA, even if other filings by that same
> applicant–such as, for example, a request for the appointment of counsel or a
> motion for a stay of execution–were presented to a federal court prior to
> AEDPA's effective date.

*Woodford*, 538 U.S. at 207. (emphasis in original).

Under *Woodford*, the Supreme Court appears to interpret the term "pending" to require

that a pleading be before the court for consideration on the merits.

In *Nick v. Renico*, No. 00-10319, 2005 WL 2679783 (E.D. Mich. Oct. 20, 2005)

(Lawson, J.), the court concluded that the petitioner's filing of a 6.500 motion, assuming it was

properly filed, stopped the limitations clock, and that the limitations period should be tolled

21

*Giles v. Wolfenbarger*
Case No. 03-74073

while the petitioner "pursued his motion for relief from judgment through the state court of appeals and state supreme court [until] the Michigan Supreme Court denied [the petitioner] leave to appeal." *Id.* at *2.

In this case, the Magistrate Judge concluded that the limitations clock began to run when the court of appeals remanded Petitioner's 6.500 motion to the trial court for appointment of counsel. The R&R emphasizes that the state court of appeals did not retain jurisdiction over Petitioner's case, and that the purpose of the remand was the filing of a new 6.500 motion. However, the real purpose of the remand was for consideration of the *merits* of the motion by the trial court rather than the court of appeals. The fact that the trial court was instructed to appoint counsel to assist in its consideration is immaterial, since Petitioner's 6.500 motion was before them for review from the time of its initial filing. Under the standards set forth by the Supreme Court in *Woodford*, *supra*, Petitioner's 6.500 motion was "pending" the entire time.

Properly filed post-conviction proceedings were "pending" for tolling purposes the entire time and the clock did not begin running when the court of appeals remanded to the trial court for appointment of counsel. Therefore, the Report and Recommendation, which concluded that the petition was untimely, will be rejected.

### 2.  Equitable Tolling

Alternatively, the Court finds that Petitioner is entitled to equitable tolling of the statute of limitations.  The magistrate judge's R&R concludes that there is no basis for equitable tolling in this case because: (1) Petitioner did not file a reply brief to argue that equitable tolling is warranted; and (2) nothing "in the parties' briefs or the state court record suggests a basis for

22

*Giles v. Wolfenbarger*
Case No. 03-74073

equitable tolling."   R&R at 7-8.

In general, equitable tolling in *habeas* cases should be analyzed according to the following factors:

(1)    the petitioner's lack of notice of the filing requirement;

(2)    the petitioner's lack of constructive knowledge of the filing requirement;

(3)    diligence in pursuing one's rights;

(4)    absence of prejudice to the respondent; and

(5)    the petitioner's reasonableness in remaining ignorant of the legal
       requirement for filing his claim.

*Dunlap v. United States*, 250 F.3d 1001, 1008-09 (6th Cir. 2001) (citing *Andrews v. Orr*, 851 F.2d 146, 161 (6th Cir. 1988)).

Petitioner is entitled to equitable tolling because during the 610 day period for which the Magistrate Judge applied the statute of limitations against Petitioner, the state trial court was in the process of appointing counsel to represent Petitioner in connection with his 6.500 motion.  It took the trial court approximately five months, from February 26, 1997 to July 10, 1997, to appoint counsel following the court of appeals's order remanding the case.  During that time, on April 24, 1997, the statute of limitations expired.  Even if the Magistrate Judge were correct in concluding that there was no "properly filed application for State post-conviction review" pending at the time of the remand order,  it would be inequitable to fault Petitioner, rather than the state trial court, for the five month delay.

Second, as to Petitioner's knowledge of the filing requirement, it is clear that Petitioner,

23

*Giles v. Wolfenbarger*
Case No. 03-74073

through his attorney, knew that he could not pursue federal *habeas* relief until he had exhausted his state court remedies.  At the time the clock ran against Petitioner, on April 24, 1997 he was working diligently to present his claims to the state court for the first time.  Therefore, Petitioner cannot be faulted for a lack of diligence.[10]

Finally, Petitioner's claim that he is innocent of felony murder entitles him to equitable tolling.  *See Souter v. Jones*, 395 F. 3d 577 (6th Cir. 2005).  James Lovejoy, the key witness against Petitioner, and for whom the trial judge made a positive credibility finding, recanted his testimony in an affidavit that was submitted with Petitioner's 6.500 motion.  In the affidavit, Lovejoy stated as follows:

- He arranged to meet Petitioner at Little Caesar's on March 7, 1989;

- In preparation for the meeting, he packaged phony drugs to exchange for money;

- He intended to rob Petitioner and then kill him;

- He wore a bullet-proof vest and carried a gun to the meeting;

- He also provided George Young with a vest and gun;

- When Petitioner requested to sample the drugs, George Young got out of the car shooting;

- He was taken to the hospital, where the police tried to interrogate him.  He refused to provide a statement;

---

[10]It is unclear why Petitioner waited more than two years following the dismissal of his first appeal of right for failure to prosecute to file his first 6.500 petition.  However, AEDPA did not take effect until 1996.  Therefore, the relevant time period for statute of limitations purposes is the year between April 24, 1996 and April 24, 1997, and not the period between the dismissal of the direct appeal and the filing of the 6.500 motion.

24

*Giles v. Wolfenbarger*
Case No. 03-74073

- The police took him out of the hospital in his gown and transported him to 1300 Beaubien;

- The police told him that because he refused to cooperate he was being booked for first-degree murder, presumably of George Young.  They told him they had a police officer's son who was providing some information and that they might not need his statement anyway;

- He told the police that he had arranged the transaction and that Young had accompanied him in order to make some money.  The police told him to "turn it around and say [he] was accompanying George Young and that Young had made the transaction."  Lovejoy Affidavit at ¶ 11.

The impact of Petitioner's involuntary statement on his trial, as well as Lovejoy's affidavit recanting his critical testimony, suggests that reasonable jurors could not convict Petitioner of felony murder in light of the case that would properly be presented to the trial court. Therefore, the Court finds that Petitioner should also be entitled to equitable tolling.

*Giles v. Wolfenbarger*
Case No. 03-74073

## V.  CONCLUSION

Petitioner was deprived of effective assistance of trial counsel because his retained attorney failed to attend trial on his behalf and at the last minute forced Petitioner to be represented by an unprepared stand-in lawyer.  Further, counsel failed to file a motion to suppress an involuntary statement.  The introduction of the statement was not harmless.  The absence of counsel also deprived Petitioner of counsel.  The court of appeals's conclusions were objectively unreasonable.  The petition was timely filed.  Therefore, Petitioner is entitled to *habeas corpus*.

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of *habeas corpus* is **CONDITIONALLY GRANTED**.

Unless a date for a new trial is scheduled within ninety days, Petitioner Cleo Giles must be unconditionally released.

**SO ORDERED**.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  January 24, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 24, 2006, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary

26

*Giles v. Wolfenbarger*
Case No. 03-74073

**APPENDIX:**

**POST-CONVICTION TIME LINE**

| | |
|---|---|
| 12/14/89 | Following a bench trial, Petitioner convicted of first-degree (felony) murder, assault with intent to rob while armed, and one count of felony firearm |
| 1/10/90 | Petitioner sentenced to life in prison. |
| 1/19/90 | Petitioner filed timely request for court-appointed post-conviction counsel. |
| 2/5/90 | Trial court received Petitioner's timely request for appointment of counsel. |
| 3/22/90 | Petitioner's family retained counsel, who filed an appearance in Detroit Recorders Court for the purposes of appeal. |
| 8/20/90 | Retained counsel filed an "affidavit concerning claim of appeal" in the Court of Appeals stating that Petitioner's request for counsel, which was filed on 1/10/90, had not been acted upon by the Court of Appeals.  Counsel informed the Court of Appeals that he had been retained by Petitioner's family, but they were not able to pay his attorney fees.  Counsel asked that the Court of Appeals consider the claim of appeal as timely in light of the circumstances. |
| 8/90-1/93 | DELAY/NO ACTIVITY FOR 27 MONTHS. |
| 1/21/93 | After representing Plaintiff for almost three years, counsel failed to file an appellate brief.  Therefore, Petitioner's direct appeal was dismissed for lack of progress. |
| 1/21/93-3/24/95 | NO ACTIVITY FOR 26 MONTHS |
| 3/24/95 | Petitioner, through attorney Georgia D. Manzie, filed a 6.500 motion in the trial court.  Apparently, Petitioner's former counsel gave Manzie the $3,000 paid by Petitioner's mother.<br><br>Attorney Manzie filed a letter with the trial court assuring that a brief in support of the 6.500 motion would be filed on April 3, 1995.  However, she never filed a brief. |

*Giles v. Wolfenbarger*
Case No. 03-74073

| | |
|---|---|
| 6/25/95 | Petitioner wrote a letter to the trial court requesting that his appeal be "reinstated" and requesting an attorney from the States Appellate Defender Office ("SADO") to assist him with his appeal. |
| 6/28/95 | State trial court denied 6.500 motion, but did not provide reasons for denial. |
| 6/26/96 | Petitioner, through appointed counsel, filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the sole issue of ineffective assistance of counsel based on post-conviction counsel's failure to file a brief in support of the 6.500 motion. Counsel argued that the court erred by failing to act on Petitioner's original motion for appointment of counsel, which was filed after his sentencing in January of 1990.<br><br>Counsel also argued that the Court of Appeals should grant leave to appeal Petitioner's underlying issues, which should have been presented in his initial appeal of right. |
| 2/26/97 | In *lieu* of granting leave to appeal, Michigan Court of Appeals remanded case to trial court for appointment of counsel to file a motion for relief from judgment. |
| 7/10/97 | Trial court appoints counsel for Petitioner |
| 10/30/98 | Counsel filed a 6.500 motion raising six claims–(1) ineffective assistance of trial counsel; (2) involuntary confession; (3) improper introduction of prior bad acts evidence; (4)newly discovered evidence; and (5)[and (6)] two separate claims of insufficient evidence. |
| 10/1/99 | Trial court granted Petitioner's 6.500 motion on the basis of ineffective assistance of trial counsel, specifically, substitute counsel's failure to move for suppression of Petitioner's statement, and ordered a new trial.  Trial court found that Petitioner had good cause for failing to raise the issues previously because his appellate counsel had failed to pursue his case on appeal, causing it to be dismissed for lack of progress.  **On appeal, the court of appeals noted that the prosecution did not challenge the trial court's finding of good cause.** |
| 12/8/99 | Prior to trial, Petitioner, through counsel, moved to suppress statement made to police while Petitioner was in hospital for treatment of gunshot wounds. |

*Giles v. Wolfenbarger*
Case No. 03-74073

| 2/25/00 | Following evidentiary hearing, trial court granted Petitioner's motion to suppress his statement.  The prosecution appealed the trial court's decision to grant a new trial. |
|---|---|
| 4/11/00 | In *lieu* of granting leave to appeal, Court of Appeals remanded case to trial court for a statement of facts and reasoning relied upon in granting Petitioner's 6.500 motion. |
| 4/28/00 | Trial court made supplemental record of her decision on Petitioner's 6.500 motion. |
| 7/20/00 | Court of Appeals granted prosecution's motion for leave to appeal. |
| 11/27/01 | Court of Appeals reversed trial court's grant of Petitioner's 6.500 motion for relief from judgment.  Petitioner sought leave to appeal in Michigan Supreme Court. |
| 10/9/02 | Michigan Supreme Court denied leave to appeal in standard form order. |
| 10/8/03 | Petitioner, through counsel, filed petition for writ of *habeas* corpus under 28 U.S.C. § 2254. |